DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Thomas R. Riley appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which denied his motion to terminate spousal support and granted appellee Linda M. Riley's motion for contempt. This Court affirms.
 I. {¶ 2} Appellant and appellee were divorced on July 29, 1993, after a thirty-five-year marriage. The parties' separation agreement, attached and incorporated into the judgment entry for divorce, provided that appellant would pay spousal support to appellee in the amount of $3,500.00 per month for the months of August and September 1993. Appellant was then ordered to pay spousal support to appellee in the amount of $2,765.00 per month. Such spousal support was "terminable upon the first occurrence of the following: 1) the death of the Wife, 2) the death of the Husband, 3) or Wife's remarriage."
 {¶ 3} The separation agreement provided for the express reservation of jurisdiction by the trial court to modify or terminate the amount or term of spousal support pursuant to R.C.3105.18(E). The separation agreement further provided that the level of spousal support is based upon appellant's "ability to pay based both upon his current income from his medical practice, income from the Riley-Hawk Gallery, and his obligation to the property settlement herein." Appellee was given the right to seek a modification of spousal support upon completion of appellant's payment over six years of a $450,882.00 property settlement. Further, the separation agreement provided that the trial court may consider appellant's normal retirement from the practice of medicine or the sale of his business as other factors in consideration of any modification of spousal support.
 {¶ 4} On August 22, 1996, appellant filed a motion to terminate spousal support based upon a substantial change of financial circumstances, specifically, appellant's retirement from the practice of medicine. In the alternative, appellant requested an order modifying spousal support for the same reason. After hearing, the magistrate denied appellant's motion to terminate or modify spousal support. Appellant timely objected, and the trial court overruled appellant's objections on October 8, 1998. Appellant then timely appealed, and this Court affirmed the judgment entry of the domestic relations court. Riley v.Riley (Oct. 27, 1999), 9th Dist. No. 19363.
 {¶ 5} On March 3, 2003, appellant again filed a motion to terminate spousal support based upon a substantial change of financial circumstances. In the alternative, appellant requested an order "greatly reducing the amount of spousal support" payable by appellant for the same reason. Appellee filed a motion to require appellant to make all spousal support payments through the Summit County Child Support Enforcement Agency ("CSEA"). In addition, appellee filed two separate motions for contempt for appellant's failure to pay spousal support, for a lump sum judgment, and for attorney fees. The matter proceeded to hearing on December 11 and 31, 2003, and February 25, 2004.
 {¶ 6} On April 8, 2004, the magistrate issued her decision, wherein she denied appellant's motion for termination or modification of spousal support, found appellant in contempt, and granted appellee's motion for attorney fees and a lump sum judgment in the amount of $27,650.00 for spousal support due from June 2003 to April 2004. Appellant timely objected.
 {¶ 7} On June 9, 2005, the trial court issued a judgment entry, overruling appellant's objections, in part, and sustaining the objections, in part. Specifically, the trial court denied appellant's motion to terminate spousal support. The trial court granted, however, appellant's motion to modify spousal support, reducing his monthly obligation from $2,765.00 to $1,500.00. The trial court further ordered that spousal support would be payable through CSEA. The trial court expressly reserved jurisdiction over the issue of spousal support. The trial court awarded $700.00 in attorney fees to appellee. In addition, the trial court found appellant in contempt for failure to pay spousal support, sentencing him to ten days in jail with the opportunity to purge the contempt by paying all spousal support arrearages and $700.00 in attorney fees to appellee within ninety days. Appellant timely appealed, setting forth two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED BY FAILING TO TERMINATE SPOUSAL SUPPORT."
 {¶ 8} Appellant argues that the trial court erred by failing to terminate spousal support after it found a change in circumstances. This Court disagrees.
 {¶ 9} This Court reviews the trial court's decision regarding the termination of spousal support under an abuse of discretion standard of review. Mottice v. Mottice (1997),118 Ohio App.3d 731, 735. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 10} R.C. 3105.18 governs the trial court's authority to modify spousal support. R.C. 3105.18(E) provides that the trial court may not modify an award of spousal support unless the circumstances of either party have changed and the divorce decree or separation agreement contains a provision specifically authorizing the trial court to modify the terms or amount of spousal support.
 {¶ 11} In determining whether a modification of spousal support is warranted, the trial court must engage in a two-step analysis. Barrows v. Barrows, 9th Dist. No. 21904,2004-Ohio-4878, at ¶ 7. The court must first determine whether jurisdiction has been established pursuant to R.C. 3105.18(E). The parties do not dispute that the jurisdictional element has been met in this case. Second, the court must then determine the appropriateness and reasonableness of the award pursuant to the factors set forth in R.C. 3105.18(C)(1). Appellant argues that the modification is unreasonable, because the trial court did not terminate his spousal support obligation. As the party seeking the reduction in spousal support, appellant maintains the burden of showing that a reduction is appropriate. Id. at ¶ 8, citingReveal v. Reveal, 154 Ohio App.3d 758, 2003-Ohio-5335, at ¶ 14.
 {¶ 12} R.C. 3105.18(C)(1) states: "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of the education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 13} A review of the record indicates that the trial court considered all relevant factors in its determination to reduce appellant's monthly spousal support obligation from $2,765.00 to $1,500.00.
 {¶ 14} The record in this case indicates that both parties have individual investment accounts worth approximately one million dollars apiece. In addition, appellee has some other accounts worth approximately $37,000.00, and she receives $590.00 per month in social security benefits. Appellant is remarried, and his new wife has an account worth approximately $180,000.00. Appellant is a retired medical doctor, who, since his previous request for modification of spousal support, has owned and operated three art galleries, one each in Seattle, Washington, and Cleveland and Columbus, Ohio. Appellant claimed a total income of $335,544.00 in 2000 and $350,959.00 in 2001. In 2002, he claimed a loss of $495,310.00 due to economic factors arising out of the tragedy of September 11, 2001 and the demise of the dot.com industry. In that year, appellant also incurred non-repeating expenses in the approximate amount of $350,000.00 due to legal matters involving an adult daughter and son-in-law. In addition, appellant will likely realize less income from his galleries than what he realized in 2000 and 2001 due to his daughter's usurpation of several key artists from appellant's galleries for use in her own gallery. Appellee testified, however, that, based on her experience working in appellant's gallery, artists are free to affiliate with various galleries at their discretion. Appellant opened and utilized several lines of credit ranging from $100,000.00 to $150,000.00 to maintain his gallery businesses during his period of loss. In addition, he borrowed $50,000.00 from his Keough investment account and $100,000.00 from his brother for the same purpose.
 {¶ 15} In 2004, during the period in which he had ceased paying support to appellee, appellant sold a home in Kirkland, Washington for $1,225,000.00. After paying off his mortgage, line of credit, and excise tax, appellant realized a profit of $325,000.00. He then repaid $95,000.00 to his brother and used the remaining $225,000.00 for a down payment on a $629,000.00 house in Columbus. Appellant also had a house for sale in Crystal Lake for $550,000.00 and a retail condominium for sale in Seattle for $750,000.00.
 {¶ 16} In addition, despite the downturn in the market, appellant's expert testified that the art industry is cyclical, with ups and downs to be expected. Appellant testified that he plans to continue operating his remaining two art galleries.
 {¶ 17} The evidence indicates that both parties are in their late sixties, that appellant is in excellent health, and that appellee suffers from rheumatoid arthritis. Appellant is a retired medical doctor, who earned his professional degree, while married to appellee. Appellee was a homemaker during the parties' thirty-five-year marriage, raising the couple's four children. Appellee attended both the University of Akron and Kent State University, but she did not earn a degree from either institution. She worked for a time during the marriage in appellant's art gallery. At her age, appellee has no plans to pursue further education, training or employment.
 {¶ 18} Appellee lives in a condominium, which she purchased for $179,000.00 after the parties divorced. She carries no mortgage on the property. Appellant lives in a $629,000.00 home and carries a mortgage, minus the $225,000.00 down payment. Appellant also maintains some significant unsecured debt, although he no longer has monthly obligations of more than $6,000.00 for a home in Washington and $1,800.00 for an apartment in Columbus.
 {¶ 19} There is evidence that the parties maintained a lavish lifestyle during their marriage. They traveled extensively, and ate and shopped on a regular basis at expensive restaurants and stores.
 {¶ 20} Appellant may deduct spousal support paid for tax purposes, while appellee must claim such support as income.
 {¶ 21} Based on its consideration of the factors set forth in R.C. 3105.18(C)(1), the trial court found that a reduction in spousal support was appropriate. The trial court reduced appellant's monthly obligation by $1,265.00, a 46% reduction. Appellant correctly notes that an award of spousal support is not based on whether or not the recipient needs the support.Schindler v. Schindler (Jan. 28, 1998), 9th Dist. No. 18243. Under the circumstances, where the trial court considered all the relevant factors and reduced appellant's monthly spousal support obligation by such a significant amount, this Court finds that the trial court did not abuse its discretion by failing to terminate spousal support. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED BY FINDING [APPELLANT] IN CONTEMPT AND AWARDING SANCTIONS AGAINST HIM WHERE HE COULD NOT CONTINUE TO PAY THE SPOUSAL SUPPORT ORDER AND HAD ASKED FOR RELIEF FROM THIS COURT."
 {¶ 22} Appellant argues that the trial court erred by finding him in contempt for failure to pay spousal support, because appellant demonstrated that he was unable to pay such support. This Court disagrees.
 {¶ 23} This Court may not overturn the trial court's ruling on a contempt motion absent an abuse of discretion. Poitinger v.Poitinger, 9th Dist. No. 22240, 2005-Ohio-2680, at ¶ 7, citingState ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons,66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 24} As this Court previously stated:
"`Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v.Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. `[A] person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order.' Courtney v. Courtney (1984),16 Ohio App.3d 329, 334." Poitinger at ¶ 31.
 {¶ 25} Furthermore,
"In a civil contempt proceeding, a finding of contempt may be made upon clear and convincing evidence. ConTex, Inc. v.Consolidated Technologies, Inc. (1988), 40 Ohio App.3d 94. A prima facie case of contempt is established where the divorce decree is before the court along with proof of the contemnor's failure to comply therewith. Rossen v. Rossen (1964),2 Ohio App.2d 381. Once a prima facie case is shown it is then incumbent upon the contemnor to present evidence of his inability to pay or other defenses that may be available to him. Id." (Emphasis omitted.) Robinson v. Robinson (Mar. 31, 1994), 6th Dist. No. 93WD053.
 {¶ 26} Appellant further cites this Court's decision inWinkler v. Winkler (1991), 81 Ohio App.3d 199, 203, for the proposition that a trial court is within its authority to find an accused contemnor in contempt, if there is no evidence of a good faith effort to comply with an existing court order.
 {¶ 27} Appellant admitted at hearing that he had not paid any spousal support to appellee from June 2003 through February 2004, a period of nine months. In this case, appellant failed to meet his burden to present evidence that he was unable to pay spousal support during that time. Appellant admitted that he had utilized various lines of credit and borrowed $50,000.00 from his Keough retirement account during that period for business purposes. In addition, he realized a profit of $325,000.00 from the sale of his Kirkland, Washington home during the period of his arrearage. Instead of utilizing any of that money to make even partial spousal support payments to appellee, he repaid an unsecured loan to his brother and used the entire $225,000.00 balance of his profit for a down payment on a $629,000.00 home in Columbus. While claiming to be in a situation where he would continually lose money in the glass art business, appellant testified that he continued to pour vast sums into maintaining that business, rather than to pay court-ordered spousal support to appellee. In addition, he expressed his intent to maintain his galleries and continue working exclusively in the art business. Further, appellant and his expert testified that appellant had the ability to borrow monies from his Keough retirement account for other purposes, not just for the support of his business. Finally, appellant testified that he had other properties for sale, specifically, a retail condominium worth $750,000.00 in Seattle, Washington. Under the circumstances, the trial court did not abuse its discretion by finding that appellant had failed to meet his burden to show that he was unable to pay spousal support. Accordingly, the trial court did not err by finding appellant in contempt for failure to pay support. Appellant's second assignment of error is overruled.
 III. {¶ 28} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which denied appellant's motion to terminate spousal support and found him in contempt for failing to pay such support, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, P.J., Whitmore, J., concur.