[Cite as *Nelson v. Nelson*, 2011-Ohio-6200.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

PATRICIA NELSON

    Appellee

    v.

RONALD NELSON

    Appellant

C.A. No.     10CA0115-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    01DR0714

DECISION AND JOURNAL ENTRY

Dated: December 5, 2011

WHITMORE, Judge.

{¶1} Defendant-Appellant, Ronald Nelson ("Husband"), appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, modifying his spousal support obligation and finding him in contempt. This Court affirms.

I

{¶2} Husband and Plaintiff-Appellee, Patricia Nelson ("Wife"), obtained a decree of divorce on June 5, 2003. The decree incorporated a separation and property settlement agreement. Per the agreement, Husband was to pay Wife spousal support in the amount of $3,000 per month for a 120-month period.[1] The agreement indicated that the support award was based on an annual income of $120,132 for Husband and $25,000 for Wife. The agreement

---

[1] The $3,000 per month support obligation applied with the exception of an undisputed period of time, beginning April 1, 2003, during which the obligation was reduced by $300 per month due to a war-deferral.

further indicated that the trial court would retain jurisdiction over the amount, but not the duration of, spousal support for purposes of future modification.

{¶3} Husband was a pilot for U.S. Airways when he and Wife divorced. In the years following the journalization of the divorce decree, U.S. Airways experienced numerous financial difficulties. Husband, anticipating a decrease in income, voluntarily took an extended leave of absence from the airline to pursue an offer to pilot for a company in Bahrain. The offer ultimately fell through and left Husband unemployed as a pilot, as he could not obtain employment elsewhere and did not have the option to return to U.S. Airways until a three-year period expired. Husband incurred a sizeable debt and ultimately stopped making his spousal support payments.

{¶4} On March 3, 2008, Husband filed a motion for modification, seeking to lower his support obligation. Wife filed a motion to show cause, asking the court to hold Husband in contempt based on his failure to pay his support obligation. A magistrate held hearings in May and August 2009 and issued her decision on December 16, 2009. The magistrate determined that a downward modification of spousal support was warranted and decreased Husband's monthly obligation to $2,175, but required him to pay $125 per month toward arrearages. The magistrate also found Husband in contempt, but indicated that he could purge the contempt by paying his support obligation and the arrearages.

{¶5} Husband filed objections to the magistrate's decision, and the trial court held a hearing on the objections. On October 7, 2010, the trial court issued a judgment entry, overruling Husband's objections and adopting the magistrate's decision to reduce Husband's support obligation and find him in contempt.

**{¶6}** Husband now appeals from the trial court's judgment and raises five assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN DETERMINING APPELLANT'S 2007, 2008 AND 2009 INCOMES."

Assignment of Error Number Two

"THE TRIAL COURT ERRED IN ITS MODIFICATION OF APPELLANT'S SPOUSAL SUPPORT OBLIGATION."

**{¶7}** In his first assignment of error, Husband argues that the trial court improperly calculated his annual income for 2007, 2008, and 2009. In his second assignment of error, Husband argues that the trial court abused its discretion in modifying Husband's spousal support obligation to the extent that the court did not further lower the amount of the award. We disagree with both propositions.

**{¶8}** This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, at ¶9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, at ¶18. This Court reviews a trial court's ultimate award of spousal support under an abuse of discretion standard. *Brubaker v. Brubaker*, 9th Dist. No. 22821, 2006-Ohio-1035, at ¶7. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. In awarding spousal support, however, a trial court also must make factual determinations as to the income level of each spouse. *Bucalo v. Bucalo*, 9th Dist. No. 05CA0011-M, 2005-Ohio-6319, at ¶44. See, also, *Zemla v. Zemla*, 9th

Dist. No. 09CA0019, 2010-Ohio-3938, at ¶7-8; *Kent v. Kent*, 9th Dist. No. 25231, 2010-Ohio-6457, at ¶9-15. "Such determinations are findings of fact, and this Court will not reverse the trial court's findings of fact if the findings are supported by some competent, credible evidence in the record." *Bucalo* at ¶44.

> "A trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, at paragraph two of the syllabus.

If jurisdiction exists, a court then must determine whether modification is warranted by considering the factors set forth in R.C. 3105.18(C). *Tufts v. Tufts*, 9th Dist. No. 24871, 2010-Ohio-641, at ¶8.

> **{¶9}** R.C. 3105.18(C)(1) provides, in relevant part, as follows:
>
> "In determining whether spousal support is appropriate and reasonable, *** the court shall consider all of the following factors:
>
> "(a) The income of the parties, from all sources ***;
>
> "(b) The relative earning abilities of the parties;
>
> "(c) The ages and the physical, mental, and emotional conditions of the parties;
>
> "(d) The retirement benefits of the parties;
>
> "(e) The duration of the marriage;
>
> "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> "(g) The standard of living of the parties established during the marriage;
>
> "(h) The relative extent of education of the parties;
>
> "(i) The relative assets and liabilities of the parties ***;
>
> "(j) The contribution of each party to the education, training, or earning ability of the other party ***;

"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

"(l) The tax consequences, for each party, of an award of spousal support;

"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

"(n) Any other factor that the court expressly finds to be relevant and equitable.

"The burden of showing that a reduction of spousal support is warranted is on the party who seeks the reduction." *Harvey v. Harvey*, 9th Dist. Nos. 09CA0052 & 09CA0054, 2010-Ohio-4170, at ¶10, quoting *Reveal v. Reveal*, 154 Ohio App.3d 758, 2003-Ohio-5335, at ¶14.

{¶10} The trial court here expressly reserved jurisdiction to modify the amount of the spousal support that it awarded Wife at the time of the divorce. Further, the record reflects that a substantial change in circumstances occurred, as Wife's spousal support award was calculated based on Husband and Wife receiving annual salaries of approximately $120,132 and $25,000, respectively. Both Husband and Wife experienced a large shift in their income levels due to changes in their respective employments, and both agree that a substantial change in circumstances occurred. See R.C. 3105.18(F) (noting that a change of circumstances includes "any increase or involuntary decrease in the party's wages [or] salary"). Because the record supports that conclusion, the remaining issue is whether the downward modification the court ordered was reasonable and appropriate. See R.C. 3105.18(C)(1).

{¶11} Although the magistrate expressly set forth her findings on all the factors contained in R.C. 3105.18(C)(1), Husband only challenges four of the factors. Specifically, he argues that the following four factors support a more significant downward modification than the court ordered: (1) the income of the parties; (2) the relative earning abilities of the parties; (3) the

relative assets and liabilities of the parties; and (4) the standard of living during the marriage. We discuss the foregoing factors below.

**Income of the Parties**

{¶12} The magistrate determined that Husband's annual income was as follows: (1) $110,415 for 2007; (2) $87,774 for 2008; and (3) $90,564 for 2009. The trial court adopted the income figures, as determined by the magistrate. The three figures then were averaged to produce an annual income level of $96,251 for Husband. Husband does not take issue with the court's decision to average his income figures for the three years, but argues that the evidence does not support the individual figures.

{¶13} As to the figures for 2007 and 2008, Husband argues that his testimony and the exhibits introduced at the hearing before the magistrate establish that his annual income was actually $106,521 in 2007 and $80,702 in 2008. The record reflects that multiple exhibits were introduced and admitted at the hearing. The exhibits included Husband's tax returns and W-2s, as well as the tax returns for the entities he owned. The magistrate cited several of the exhibits in her written decision. Moreover, the trial court stated in its judgment entry that "[t]he Magistrate obtained the income figures for [] Husband from tax documents and testimony." The exhibits, however, are not a part of the record that was filed with this Court on appeal. Although the transcripts from the hearings before the magistrate and the trial court were part of the appellate file that this Court received, none of the exhibits were included.

{¶14} "An appellant is responsible for providing this Court with a record of the facts, testimony, and evidentiary matters necessary to support the assignments of error." *Boston Twp. Bd. of Trustees v. Marks Akron Medina Trucks & Parts, Inc.*, 9th Dist. No. 24880, 2011-Ohio-4223, at ¶11, citing *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 314. Specifically,

the record must contain papers and exhibits that were filed in the trial court. App.R. 9(A). In the absence of evidence that is necessary to resolve an assignment of error, "the reviewing court has 'no choice but to presume the validity of the [trial] court's proceedings, and affirm.'" *Cuyahoga Falls v. James*, 9th Dist. No. 21119, 2003-Ohio-531, at ¶9, quoting *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199.

{¶15} As the appellant, it was Husband's duty to ensure that the record on appeal was complete. *Boston Twp. Bd. of Trustees* at ¶11. Because Husband's argument with regard to his income levels for 2007 and 2008 depends upon evidence that is absent from the record before this Court, we must presume regularity and conclude that there was no error in the determination of those figures. *Knapp*, 61 Ohio St.2d at 199. Husband's argument that his 2007 and 2008 annual income figures are incorrect is overruled.

{¶16} With regard to Husband's 2009 annual income, the record reflects that the magistrate calculated that figure by annualizing Husband's monthly expenditures. Husband testified that he did not receive any income in 2009 other than unemployment. He further testified, however, that his monthly debts amounted to $7,547 per month and that, at the time of the hearing, he had been able to pay those debts on time and in full through credit cards, loans, and lines of credit. Because Husband stated that he did not have any income for 2009, the magistrate relied upon Husband's testimony that he was spending $7,547 per month to calculate his income level for the year.

{¶17} R.C. 3105.18(C)(1)(a) directs that, in making a spousal support determination, a court must consider the "income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed[.]" "R.C. 3105.18(C) does not limit the sources from which income may be derived or the characteristics of income that may be

considered for purposes of determining an appropriate award of spousal support." *Karis v. Karis*, 9th Dist. No. 23804, 2007-Ohio-759, at ¶11. The magistrate heard testimony that Husband sold a car wash in Medina in 2006 for 1.95 million dollars, on which he largely avoided tax repercussions by using the money in a like-kind exchange to purchase another car wash and a large rental property in Florida. Husband acknowledged at the hearing that he owned the car wash; the Florida rental property, which he purchased for $533,000; a home worth between $500,000 and $525,000; a time-share in Aruba; and three vehicles: a Lexus, BMW, and Infiniti. Husband's accountant also testified that, at the time of the hearing, Husband had a credit rating of 774; a low risk rating. He insisted, however, that he did not have any income except for unemployment and had borrowed significant amounts of money in an attempt to stay current on his expenses.

{¶18} Husband asserts that the magistrate and trial court erred by determining that his annual income for 2009 would be $90,564.[2] He argues that he was using borrowed money to pay all of his debts and that borrowed money is not income because it must be repaid. The magistrate, however, simply relied upon Husband's testimony that he had been able to afford $7,547 per month to assign a numerical value and to estimate his income level for purposes of calculating his support payment. See, generally, *Ruiz-Bueno v. Ruiz-Bueno*, 11th Dist. No. 2207-L-180, 2008-Ohio-3747, at ¶45. There was testimony that Husband owned multiple pieces of property, including a car wash and rental property. The foregoing could be considered sources of income for purposes of R.C. 3105.18(C). See *Karis* at ¶11-13 (concluding that the husband's

---

[2] The 2009 figure represented a projected income for 2009, as the hearings took place in May and August of that year.

capital gains, obtained from selling properties and renting others, could be considered income for purposes of spousal support). See, also, *Demchak v. Demchak*, 9th Dist. No. 09CA0076-M, 2010-Ohio-3798, at ¶6-12 (rejecting the husband's argument that pass-through income from his corporation could not be considered in calculating income for purposes of spousal support). In the absence of any exhibits, this Court has an incomplete picture of Husband's financials for years in question and cannot make assumptions as to what the record showed as to the income from Husband's properties. Unlike this Court, the lower court had the benefit of all of the evidence produced and admitted at the modification hearing.

**Relative Earning Ability**

{¶19} Wife never had a professional career and primarily raised the couple's two children during the marriage while Husband worked for U.S. Airways. The parties stipulated that Wife earned approximately $47,300 annually in a sales position that she obtained after the divorce. Husband enjoyed a salary in excess of $100,000 as a pilot until he left U.S. Airways. Husband testified that after he lost the job offer, he was able to pilot a few corporate flights for another entity in 2008, but had not been able to find any long-term employment as a pilot. Further, Husband did not yet have the option to return to U.S. Airways. Although Husband retained his seniority when he took an extended leave and had the option to return to the airline in the future, he could not yet do so at the time of the hearing because other pilots were furloughed and he had to remain on leave for at least three years.

{¶20} Husband argues that he diligently sought employment after losing the job offer in Bahrain, but that he was unable to secure another job because of the state of the economy and the discovery of a medical condition he possessed. Husband testified that he applied for a pilot position in China, but also lost that offer after blood testing revealed that he was pre-diabetic.

Husband testified that a diabetic condition could prevent him from piloting. He admitted, however, that he was not yet diabetic and could retain his first-class medical certificate so long as he could keep the condition under control. He also did not present any evidence, other than his own testimony, as to any jobs that he had applied for and had not been offered. See *Harvey* at ¶10. Moreover, Husband had the option of returning to U.S. Airways after his leave period expired and owned and operated a car wash and rental property. There was no evidence that Wife was capable of earning anywhere near the income that Husband was capable of earning, and had earned in the past, as a pilot and businessman. See *Collins v. Collins*, 9th Dist. No. 10CA0004, 2011-Ohio-2087, at ¶18-20 (discussing relative earning ability and noting that R.C. 3105.18(C)(1)(b) allows a court "to juxtapose one spouse's earning ability against the other spouse's earning ability").

**Relative Assets and Liabilities**

{¶21} At the time of the hearing, both Husband and Wife had financial difficulties. Husband lost his U.S. Airways retirement after the company experienced a bankruptcy, and Wife borrowed against her 401(k) and sold several personal items to meet her living expenses after Husband stopped paying his support obligation. Husband testified that he had a significant amount of business and personal debt, including a mortgage and additional line of credit debt amounting to $643,000. Even so, Husband admitted that he still had a low-risk credit rating and had remained current on his monthly expenses, with the exception of spousal support. Husband also admitted that he owned a home worth between $500,000 and $525,000; a Florida rental property that he purchased for $533,000; a car wash that he purchased for over one million dollars; a time-share in Aruba; and three vehicles: a Lexus, BMW, and Infiniti. Although Husband's home was encumbered by a mortgage and line of credit, he testified that he owned the

Florida property outright. Husband indicated that he did not want to sell the property, in part, because he had procured it through a like-kind exchange and would incur significant tax repercussions as a result of the sale. Wife, on the other hand, testified that her home had been foreclosed upon because she had been unable to pay the mortgage without Husband's support payments and that she did not own her own vehicle.

{¶22} Husband argues that the lower court gave little weight to the fact that his assets were encumbered by debt and disregarded Wife's testimony that she had sometimes financially helped her children because she had money in excess of her expenses. As noted above, however, not all of Husband's assets were encumbered by debt. And while Wife testified that she had been able to help her children at some points in 2008, there also was testimony that she had lost her home to foreclosure and sold several personal possessions to try to offset her dwindling support payments.

**Standard of Living and Other Relevant Factors**

{¶23} There was no specific testimony at the hearings before the magistrate as to the standard of living that the parties enjoyed during the marriage. The magistrate determined, based on Husband's salary level of approximately $120,000 per year, that the parties "would have enjoyed a fairly high standard of living" during the marriage. The magistrate further noted that Wife had since "settle[d] for a much lower standard" than Husband. Husband argues that there was no evidence to support either finding, particularly in light of Wife's testimony that she sometimes had been able to help her children when she had funds in excess of her expenses. He has not explained, however, why the magistrate could not infer that Wife enjoyed a higher standard of living while married to Husband, given his substantial salary at the time and the fact

that, since that time, she had experience a foreclosure and other financial difficulties. See App.R. 16(A)(7).

**{¶24}** Husband and Wife were married for almost twenty-six years. After the divorce, Husband voluntarily decided to take an extended leave from U.S. Airways to pursue another job opportunity. Husband spent approximately $34,000 of his own money to train for the new job in Bahrain, despite already being in arrears on his spousal support payments at that point in time. He also was able to remain current on all of his monthly bills with the exception of spousal support. Husband informed U.S. Airways of his decision to leave in June 2008, but did not inform Wife that he had left his job until after receiving his last paycheck from the airline. He then stopped making his spousal support payments in August 2008 and informed Wife that he would not be making any additional payments until he obtained other employment. In considering other relevant factors under R.C. 3105.18(C)(1)(n), the magistrate noted that Husband did not produce any supporting documentation for the income levels he reported and that she did not believe Husband's testimony that he had no income, given his ability to remain current on his sizeable monthly expenses. Thus, while the lower court agreed that a spousal support modification was appropriate given the position of the parties, the court determined that Husband should still pay Wife $2,175 per month, in addition to arrearages; a reduction of $825 per month from Husband's previous support obligation.

**{¶25}** Other than criticizing the lower court for using a FinPlan calculation to aid in calculating Husband's new support obligation, Husband fails to offer an argument or justification for further reducing the amount of the obligation. The lower court considered all the factors under R.C. 3105.18(C)(1) and determined, in its discretion, that lowering Husband's support obligation to $2,175 per month was reasonable and appropriate under the circumstances.

*Brubaker* at ¶7. Based on our review of the record, we cannot conclude that the trial court abused its discretion by adopting the magistrate's decision and reducing Husband's obligation to the above-stated amount. Husband's first and second assignments of error are overruled.

<u>Assignment of Error Number Three</u>

"THE TRIAL COURT ERRED BY EXTENDING THE TERM OF THE APPELLANT'S SPOUSAL SUPPORT OBLIGATION IN VIOLATION OF R.C. §3105.18(E)(1) AND THE SPECIFIC TERMS OF THE JUDGMENT ENTRY OF DIVORCE FILED IN THIS MATTER."

**{¶26}** In his third assignment of error, Husband argues that the court erred because it extended the term of his spousal support obligation. Specifically, he argues that the court's modification order is unclear as to the duration of his support obligation. We disagree.

**{¶27}** The trial court's modification order reads, in relevant part, as follows:

"Effective January 1, 2008 [Husband] shall pay spousal support in the amount of $2,175 per month plus 2% processing charge through the Medina County Child Support Enforcement Agency. This spousal support amount shall be paid for the balance of the original term, until the earlier occurrence of Husband's death, Wife's death, Wife's remarriage, Wife['s] cohabitation with an adult male not related by marriage; or the completion of the term of one hundred twenty (120) consecutive months, provided, however, that Husband makes each consecutive monthly payment as required herein."

Husband argues that the language the court employed could be read to order 120 months of spousal support from January 1, 2008 instead of from the date provided in the original decree. He objected to the magistrate's decision, which employed similar language, on the same basis. The trial court rejected Husband's argument that his spousal support term had been extended. Further, the court noted that an increase in the duration of Husband's obligation was not even an option as the court had not expressly reserved jurisdiction to modify its duration. See *Mandelbaum* at paragraph two of the syllabus.

**{¶28}** We agree that the foregoing language does not impose a longer term of spousal support upon Husband. The plain language of the order specifies that, absent some event causing an earlier termination of support, the support amount shall be paid "*for the balance of the original term*, until *** the completion of the term of one hundred (120) consecutive months[.]" (Emphasis added.) That language would be nonsensical if the court meant for Husband to pay support beyond the balance of the original term. Husband's third assignment of error is overruled.

<u>Assignment of Error Number Four</u>

"THE TRIAL COURT ERRED BY FINDING THE APPELLANT IN CONTEMPT."

**{¶29}** In his fourth assignment of error, Husband argues that the trial court abused its discretion by finding him in contempt based on his failure to pay his support obligation. We disagree.

**{¶30}** "A court's decision in a contempt proceeding should not be reversed absent an abuse of discretion." *Young v. Young*, 9th Dist. No. 25640, 2011-Ohio-4489, at ¶17. "Contempt of court may be defined as disobedience of a court order or conduct that brings the administration of justice into disrespect or impedes a court's ability to perform its functions." *Freeman v. Freeman*, 9th Dist. No. 07CA0036, 2007-Ohio-6400, at ¶45, quoting *Willis & Linnen Co., L.P.A. v. Linnen*, 9th Dist. No. 22452, 2005-Ohio-4934, at ¶17. "A prima facie case of contempt is established where the divorce decree is before the court along with proof of the contemnor's failure to comply therewith." *Riley v. Riley*, 9th Dist. No. 22777, 2006-Ohio-656, at ¶25, quoting *Robinson v. Robinson* (Mar. 31, 1994), 6th Dist. No. 93WD053, at *3.

**{¶31}** Husband concedes that he stopped paying Wife spousal support in August 2008 and owed arrearages to Wife. The trial court held Husband in contempt for his failure to pay his

support obligation, but further held that he could purge the contempt by paying his monthly obligation in the reduced amount of $2,175 per month, plus an additional amount of $125 per month toward his arrearages. Husband argues that the lower court abused its discretion by holding him in contempt because a litigant's good faith inability to pay money in accordance with a court order is a valid defense to contempt. See *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 334.

{¶32} Here, the magistrate and trial court rejected Husband's argument that he had a good faith inability to pay his spousal support obligations. Husband testified that, although he was overdue on his spousal support payments to Wife at the time, he spent approximately $34,000 of his own money to train for a job offer in Bahrain. He also admitted that, while he had altogether stopped paying spousal support, he had been able to remain current on all of his own monthly expenses, which totaled approximately $7,547 a month. Husband did not make any attempt to pay even a portion of his support obligation. Indeed, Husband informed Wife that he would not be paying support at all until he obtained another job. The lower court determined that Husband chose to pay all of his own expenses rather than his court-ordered obligation. Based on the record before us, we cannot conclude that the court's determination amounted to an abuse of discretion. Husband's fourth assignment of error is overruled.

Assignment of Error Number Five

> "THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING FACTUAL FINDINGS AND LEGAL CONCLUSIONS ARBITRARILY AND CAPRICIOUSLY."

{¶33} In his fifth assignment of error, Husband argues that the trial court erred in several of its factual determinations, which then affected the legal conclusions that trial court reached.

{¶34} Husband challenges several of the specific factual findings that the magistrate reached and the trial court adopted. The record reflects, however, that Husband did not specifically object to any of the magistrate's factual findings in his written objections to the magistrate's decision. Civ.R. 53 provides that, except for a claim of plain error, a party shall not assign error to a factual finding on appeal unless the party specifically objects to that finding in accordance with the rule. Civ.R. 53(D)(3)(b)(iv). By failing to object with particularity to the factual findings that Husband now challenges, Husband forfeited his argument. Id. Moreover, he has not argued plain error on appeal. Because Husband forfeited his challenge to the factual findings at issue and has not argued plain error, this Court will not address his arguments. *Young v. Young*, 9th Dist. No. 25640, 2011-Ohio-4489, at ¶18.

{¶35} Husband's fifth assignment of error also includes a brief argument that he was wrongfully required to appear pro se at the May hearing before the magistrate because his counsel unexpectedly withdrew and the magistrate refused to continue the hearing. Once again, however, Husband did not enter any objection to the magistrate's decision on this basis or argue plain error on appeal. Thus, we also do not reach any argument that he was wrongfully denied a continuance. Id. Husband's fifth assignment of error is overruled.

III

{¶36} Husband's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———————————————————
BETH WHITMORE
FOR THE COURT


BELFANCE, P. J.
CARR, J.
CONCUR

APPEARANCES:

DAVID H. FERGUSON, Attorney at Law, for Appellant.

STEVE C. BAILEY, Attorney at Law, for Appellee.