[Cite as *McDonald v. Rodriguez*, 2017-Ohio-8509.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Jeffrey McDonald

Appellant

v.

Sonia Rodriguez fka McDonald

Appellee

Court of Appeals No. S-16-042

Trial Court No. 09 DR 000026

**DECISION AND JUDGMENT**

Decided: November 9, 2017

* * * * *

Shelly L. Kennedy, for appellant.

Joseph A. Albrechta, John A. Coble, and George J. Schrader, for appellee.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} Appellant, Jeffrey McDonald, appeals the judgment of the Sandusky County

Court of Common Pleas, Domestic Relations Division, holding him in contempt for

failing to comply with the terms of a Separation Agreement that required him to seek refinancing of the marital residence following the dissolution of his marriage to appellee, Sonia Rodriguez.

## A. Facts and Procedural Background

{¶ 2} On February 6, 2009, the trial court issued its Final Decree of Dissolution terminating the marriage between appellant and appellee. The decree incorporated the terms of a Separation Agreement. The Separation Agreement contained the following provision:

> The parties jointly own the marital residence at 918 Christy Boulevard, Fremont, Ohio. The husband shall retain possession of the home and be responsible for all indebtedness on the home. Wife shall quit claim deed her interest in the home to the husband. Husband shall seek refinancing in his name if the home is not sold in six months from the date of this agreement.

{¶ 3} Over six years later, appellee filed a motion to show cause with the trial court, in which she alleged that appellant had not sold or refinanced the marital residence in accordance with the foregoing provision and should therefore be held in contempt. Appellee stated that appellant's violation of the Separation Agreement led to her being unable to rent or purchase a home for herself because she has an outstanding mortgage on her credit report. Additionally, appellee noted that appellant moved to Virginia following the dissolution of the marriage, and was now generating income from the marital residence by utilizing it as a rental property.

2.

**{¶ 4}** A hearing on appellee's motion to show cause was conducted on December 14, 2015. At the hearing, appellant informed the court that he had made six attempts to refinance the marital residence, but was unsuccessful in doing so because he was $5,000 short of having the 25 percent equity in the home that the financial institutions required.[1] Appellant further explained that he listed the home for sale with a realtor but received no offers while the home was on the market. As a result of his inability to sell of refinance the home, appellant began leasing the property to tenants at a rent of $750 per month. Appellant stated that his monthly payment for the mortgage, including taxes and insurance, totals $671. At the close of the hearing on appellee's motion to show cause, the trial court ordered appellant to "attempt to refinance the subject real property and make application with at least three (3) lenders to refinance the subject real property * * *."

**{¶ 5}** On September 15, 2016, the trial court held a follow-up hearing to its hearing on appellee's motion to show cause. At this hearing, appellant testified that he filed applications for refinancing of the marital residence with three lenders (Fremont Federal Credit Union, Huntington Bank, and Key Bank). His application to Fremont Federal Credit Union was denied based upon his lack of equity in the residence and "certain credit issues." Likewise, Huntington Bank denied his application due to appellant's lack of equity. Finally, Key Bank indicated that it may be willing to refinance the residence if appellant

---

[1] During these proceedings, appellant testified that he earns $88,000 per year and pays $1,795 per month in rent to live in Virginia.

3.

paid the closing cost, which was $5,000, plus a down payment in an amount equivalent to 25 percent of the value of the property, which appellant estimated at $17,000. Appellant determined that a formal application to Key Bank would be futile because he did not have the $23,000 necessary to secure the loan. Upon further questioning, appellant acknowledged that he had recently been married in Jamaica, a trip that cost between $6,000 and $7,000. Moreover, appellant testified that he previously purchased an engagement ring at a cost of $8,000.

{¶ 6} At the conclusion of the hearing, the trial court issued its decision finding that appellant had failed to comply with its order directing him to take steps to refinance the marital residence. In its decision, the court stated:

> It has been seven years since [appellant] obligated himself to refinance. He has failed to do so. In that time he has remarried, spending upwards of $8,000.00 on an engagement ring, nearly $7,000.00 on his wedding, a honeymoon in Jamaica. He is a mechanical engineer making about $88,000.00 a year, and resides in an apartment where the monthly rent is $1,750.00. But he can't refinance a house loan which earns him $750.00 a month in rent. The Court doesn't buy it.

Consequently, the court found appellant to be in contempt, and ordered appellant to pay appellee $375 per month (representing one-half of the monthly rent generated by the marital residence) until such time as the marital residence was refinanced. The court also

4.

ordered appellant to pay appellee's attorney the sum of $1,500 in fees, along with the court costs incurred during the contempt proceedings. Appellant's timely appeal followed.

## B. Assignments of Error

{¶ 7} On appeal, appellant assigns the following errors for our review:

Assignment of Error 1: The trial court abused its discretion in finding appellant in contempt for failing to comply with its order requiring him to seek refinancing of the prior marital residence.

Assignment of Error 2: The trial court abused its discretion in ordering purge conditions that were unreasonable, void and beyond the scope of the court's subject matter jurisdiction.

## II. Analysis

{¶ 8} In his first assignment of error, appellant argues that the trial court abused its discretion by holding him in contempt for failing to comply with its order requiring him to seek refinancing of the marital residence.

{¶ 9} In general, contempt occurs when a party disobeys a court order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "To establish contempt, the moving party must 'establish a valid court order, knowledge of the order by the defendant, and a violation of the order.'" *Henry v. Henry*, 9th Dist. Summit No. 27696, 2015-Ohio-4350, ¶ 12, quoting *State v. Komadina*, 9th Dist. Lorain No. 03CA008325, 2004-Ohio-4962, ¶ 11. "'It is an accepted rule of law that for a person to

5.

be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.'" *Collette v. Collette*, 9th Dist. Summit No. 20423, 2001 Ohio App. LEXIS 3823, *9-10 (Aug. 29, 2001), quoting *Ex Parte Quevedo*, 611 S.W.2d 711, 713 (Tex.App.1981).

{¶ 10} Courts classify contempt rulings as either civil or criminal in nature. *Id.* The parties agree that this is a case of civil contempt, characterized by a sanction designed to coerce a party in violation of a court order to comply with the order for the benefit of the complaining party. *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12. Civil contempt requires proof by clear and convincing evidence. *Zemla v. Zemla*, 9th Dist. Wayne No. 11CA0010, 2012-Ohio-2829, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more certain than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 11} An appellate court will not reverse the decision of a lower court in a contempt proceeding absent a showing of an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981), citing *Cady v. Cleveland Worsted Mills Co.*, 126 Ohio St. 171, 184 N.E. 511 (1933). The term "abuse of discretion" implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

6.

{¶ 12} Here, appellant argues that the evidence adduced at the contempt hearings demonstrated that he sought refinancing of the marital residence several times, and further complied with the trial court's order to seek refinancing with three additional financial institutions during the interim between the initial hearing on appellee's motion to show cause and the hearing that occurred nine months later on September 15, 2016. In response, appellee contends that the trial court acted properly in an effort to carry out the clear intent of the parties to the Separation Agreement that the marital residence be refinanced and that appellee be removed from the mortgage on that property.

{¶ 13} Under the express terms of the Separation Agreement that was incorporated into the trial court's Final Decree of Dissolution, appellant was required to "seek refinancing in his name if the home is not sold in six months from the date of this agreement." We understand the parties' use of the word "seek" to impose an obligation on appellant to make a good faith effort toward refinancing the marital residence. That appellant sought refinancing without success on numerous occasions is made clear from the record. What is equally clear, however, is that appellant was offered refinancing by at least one financial institution, Key Bank, albeit with certain conditions that would have required appellant to expend up to $23,000.

{¶ 14} Appellant claimed to be financially unable to meet Key Bank's conditions. Notably, appellant's financial situation was negatively impacted by his decision to make expensive upgrades to the home in order to maximize its rental value, incur educational expenses for himself, purchase an $8,000 engagement ring for his fiancée, and pay $7,000 for a Jamaican honeymoon. Had appellant decided instead to apply these expenditures to

7.

the refinancing of the subject property, he would have been able to secure such refinancing. We find that appellant's actions in this regard amounted to a lack of good faith and a violation of the terms of the Separation Agreement. *See e.g., Nelson v. Nelson*, 9th Dist. Medina No. 10CA0115-M, 2011-Ohio-6200, ¶ 32 (affirming contempt order where magistrate found no "good faith inability to pay" spousal support because contemnor invested thousands of dollars in his own job training and chose to remain current on all his own expenses rather than pay his court-ordered obligation); *Olson v. Newhouse*, 9th Dist. Summit No. 24755, 2010-Ohio-1349, ¶ 4 (affirming contempt finding where magistrate found that husband "made a poor choice to pay other obligations in lieu of support"). Consequently, we find that the trial court did not abuse its discretion in holding appellant in contempt based upon its determination that appellant violated its order.

{¶ 15} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 16} In his second assignment of error, appellant argues that the trial court abused its discretion in ordering purge conditions that were unreasonable, void and beyond the scope of the court's subject matter jurisdiction. McDonald argues that the purge condition was improper because it regulates future conduct. He also claims that it is an improper modification of the parties' Separation Agreement.

{¶ 17} The trial court's judgment provides:

> The Court finds Plaintiff to be in contempt. This is a continuous finding which will apply until the property is refinanced, and Defendant's name removed from the loan thereon. The punishment is that until Plaintiff

8.

completes his refinancing, he is to pay Defendant one half of the gross rent each month, to wit, $375.00.

{¶ 18} As noted above, the contempt finding at issue here involves civil contempt. "A key aspect of a civil contempt * * * is the opportunity for the contemnor to purge [himself] of the contempt sanction, and the discontinuation of the sanction once compliance is achieved." *In re K.B.*, 8th Dist. Cuyahoga No. 97991, 2012-Ohio-5507, ¶ 11, citing *In re Purola*, 73 Ohio App.3d 306, 311-312, 596 N.E.2d 1140 (3d Dist.1991) (explaining that where a sanction is one for civil contempt, "[o]nce the contemnor complies with the court's order, the purpose of the contempt sanction has been achieved and the sanction is discontinued").

{¶ 19} Ohio courts regularly hold that "orders that purport to regulate future conduct do not provide the party with the true opportunity to purge." *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849, ¶ 31. This issue commonly arises where a party fails to make required child or spousal support payments, and the trial court finds the party in contempt, sentences him or her to jail time, then suspends the sentence on the condition that the party make the required payments. Appellate courts reviewing these situations have concluded that "a purge condition which requires future compliance with an established order is an abuse of discretion * * *." *Id.* They explain, "[a] contempt order which regulates future conduct simply amounts to the court's reaffirmation of its previous support order and can have no effect since any effort to punish a future violation of the support order would require new notice, hearing and determination." (Internal citations and quotations omitted.) *Id.*; *Burke v. Burke*, 7th Dist. Mahoning No. 13 MA 24, 2014-

9.

Ohio-1402, ¶ 8; *Chiro v. Foley*, 8th Dist. Cuyahoga No. 100962, 2014-Ohio-3728, ¶ 23 (characterizing such purge conditions as "an attempt to regulate the contemnor's future conduct rather than punish him for past conduct").

{¶ 20} In its September 19, 2016 judgment, the trial court deems McDonald's contempt to be "continuous." The judgment does not specifically refer to "purge" conditions; it simply orders McDonald to pay half the rental proceeds to Rodriguez until he refinances the home. In essence, McDonald can purge his continuous contempt only by complying with the original order requiring him to refinance. The purge condition is not an obligation already required by the decree, and it provides a strong incentive for McDonald to comply with the decree by penalizing him financially so long as he remains noncompliant. *See City of Cleveland v. Paramount Land Holdings, LLC*, 8th Dist. Cuyahoga Nos. 96180, 96181, 96182, 96183, 2011-Ohio-5382, ¶ 17-18 (affirming judgment where trial court found defendant in civil contempt for failing to appear in court and imposed financial sanction of $1,000 per diem until defendant made appearance). Even though the condition imposes a sanction to be carried out in the future, it is not merely a "reaffirmation of [a] previous * * * order" or an "effort to punish a future violation of [an] order," as described in the cases cited above. The purge condition properly serves to coerce McDonald's compliance with a past order and does not purport to regulate future conduct.

{¶ 21} Further, we find that the purge condition is not a modification of the parties' property settlement. It establishes a consequence for McDonald's failure to abide by the original Separation Agreement and provides a financial incentive to comply with the

10.

agreement as expeditiously as possible. *See e.g., Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 30 (finding no improper modification of spousal support with respect to purge condition requiring wife to pay $3,848 to husband for losses sustained because of wife's interference with sale of home).

{¶ 22} As for the trial court's award of attorney fees, McDonald argues that there was no evidence of the number of hours expended by Rodriguez's attorney, no itemization of the hours spent, and no testimony regarding the reasonableness of the fees. Rodriguez responds that the trial court awarded "the usual and customary token fee granted in Sandusky County," and insists that her attorney fees far exceeded the amount awarded. She therefore, agrees that the court's award of $1,500 in attorney fees was in error and requests that the issue be remanded for determination of the amount and reasonableness of her fees. We agree that remand for a determination of the amount and reasonableness of fees is appropriate.

{¶ 23} Accordingly, appellant's second assignment of error is well-taken, in part.

### III. Conclusion

{¶ 24} For the foregoing reasons, the judgment of the Sandusky County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part.

11.

This matter is remanded to the trial court for determination of the amount and reasonableness of attorney fees. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                      _____
                                                              JUDGE
James D. Jensen, P.J.

                                                     _____
Christine E. Mayle, J.                              JUDGE
CONCUR.

                                                     _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.