DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} Relator, Timothy F. Lawrence, Jr. ("relator"), filed this original action seeking a writ of mandamus directing respondent, the Industrial Commission of Ohio ("the commission") to vacate its order denying relator's application for temporary total disability ("TTD") on the grounds that relator voluntarily abandoned his employment. We referred *Page 2 
this matter to a magistrate pursuant to Civ.R.53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision dated August 30, 2006. (Attached as Appendix A.)
 {¶ 2} In that decision, the magistrate concluded that a writ of mandamus should be issued ordering the commission to vacate its order denying relator's application for TTD, and to reissue an order either granting or denying TTD after fully examining the circumstances surrounding relator's injury and his subsequent firing. Relator filed an objection to the magistrate's decision, in response to which the commission filed a memorandum contra.
 {¶ 3} On August 9, 2004, relator filled out an application for employment with the employer, Evergreen Plastics. The application included a question asking relator if he had ever pled guilty or no contest to, or been convicted of, a crime. Relator checked the box on the application form indicating he had not been convicted of a crime. This answer was not truthful, because relator had been convicted of a crime. Relator began working for the employer in September of 2004, and suffered a workplace injury on May 18, 2005.
 {¶ 4} We will not reiterate the entire medical history, which is set forth in the magistrate's decision. For purposes of our discussion, it is sufficient to note that relator's claim was allowed for a leg and knee sprain, and that relator submitted C-84's certifying that relator was a surgical candidate and that he was TTD through October 10, 2005.
 {¶ 5} A district hearing officer ("DHO"), heard the employer's appeal from the BWC's order allowing relator's claim on September 9, 2005. At the hearing, the employer argued that relator voluntarily abandoned his employment because in July of 2005, *Page 3 
relator's employment had been terminated on the grounds that he had falsified his employment application when he checked the box indicating that he had not been convicted of a crime. The DHO rejected the employer's argument because the application was not submitted as evidence and when questioned, relator indicated that his practice when asked about previous convictions when applying for employment was to either decline to answer the question, or to answer in the affirmative.
 {¶ 6} The employer appealed the DHO's decision to a staff hearing officer ("SHO"). At the SHO hearing, the employer offered a copy of relator's employment action, as well as the note from the employer informing relator that his employment was being terminated. The SHO allowed the claims for the requested conditions and authorized the medical treatment. However, the SHO concluded that relator was not entitled to an award of TTD because he voluntarily abandoned his employment when he was terminated for stating on his employment application that he had not been convicted of any crimes.
 {¶ 7} Both the employer and relator appealed. Both appeals were denied by the commission by order mailed November 19, 2005. Relator then filed the instant action seeking a writ of mandamus.
 {¶ 8} In order to establish the right to a writ of mandamus, relator must show that the commission abused its discretion by entering an order that is not supported by any evidence in the record. State ex rel.Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76, 26 OBR 66,497 N.E.2d 70. Where the record shows "some evidence" supporting the commission's findings, there is no abuse of discretion, and mandamus is not appropriate. *Page 4 State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56,29 OBR 38, 505 N.E.2d 962.
 {¶ 9} The magistrate's decision was based on the principles of abandonment of employment that have been developed through a number of cases. Ohio courts have recognized that, in some circumstances, voluntary abandonment of employment can break the chain of causation between an industrial injury and the loss of wages, and result in denial of TTD. State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42,517 N.E.2d 533; State ex rel. Rockwell Internatl. v. Indus. Comm.
(1988), 40 Ohio St.3d 44, 531 N.E.2d 678. Employment termination that results from a claimant's willing conduct can result in a finding that the claimant's job loss was voluntary in character, even where the claimant did not consent to the termination. State ex rel. Watts v.Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202.
 {¶ 10} More specifically, the Supreme Court of Ohio has held that termination of employment for the violation of a work rule may constitute the voluntary abandonment of employment where: (1) the employer's rule or policy clearly defined the prohibited conduct, (2) the rule or policy identified the violation as an offense for which the employee could be discharged, and (3) the worker knew, or should have known, both the rule and the possible consequences of violating that rule. State ex rel Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, 650 N.E.2d 469. In recognizing the possible abuse that may occur where termination of employment may result in the denial of TTD for an injured worker, the Supreme Court of Ohio has stated that it is "imperative to carefully examine the totality of the circumstances when such a situation exists." State ex rel. Smith v. Superior's BrandMeats, Inc. *Page 5 
(1996), 76 Ohio St.3d 408, 411, 667 N.E.2d 1217
 {¶ 11} In applying the principles of voluntary abandonment of employment and its effect on TTD, one of the most important factors is the timing of the abandonment in relation to the worker's claim. For example, the fact that an employee voluntarily abandoned employment is irrelevant to a claim for TTD where the employee gains new employment, but becomes unable to work at the new job due to the original industrial injury. State ex rel Baker v. Indus. Comm., 89 Ohio St.3d 376,2000-Ohio-168, 732 N.E.2d 355; State ex rel. McCoy v. DedicatedTransport, Inc, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. On the other hand, TTD can be granted where an employee's termination was the result of absences directly related to the workplace injury. State exrel. Pretty Prods., Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5,670 N.E.2d 466. TTD may be denied where a disabling injury and the work rule violation leading to termination of employment occurred simultaneously.State ex rel. Gross v. Indus. Comm., 112 Ohio St.3d 65, 2006-Ohio-6500,858 N.E.2d 335.
 {¶ 12} In this case, relator argues that it is not necessary to even engage in the full analysis of voluntary abandonment, because relator was already disabled at the time his employment was terminated. Relator argues that under Pretty Prods., a claimant can only abandon a former position of employment where he or she "has the physical capacity for employment at the time of the abandonment or removal." PrettyProds., supra, at 7. See, also, State ex rel. Brown v. Indus. Comm.
(1993), 68 Ohio St.3d 45, 623 N.E.2d 55. *Page 6 
 {¶ 13} In his objections to the magistrate's decision, relator takes issue with specific language used by the magistrate stating that, "[r]elator's argument that the commission can never applyLouisiana-Pacific in this type of situation, is rejected." (Magistrate's Decision, at 13.) Relator argues that his citation toLouisiana-Pacific was not made for the purpose of arguing that the commission could never apply to cases such as relator's, but was instead merely cited for the purpose of establishing the standard for voluntary abandonment. However, a reading of relator's original brief in this case shows that relator was attempting to distinguishLouisiana-Pacific by citing to Pretty Prods. and Brown as cases showing that the voluntary abandonment analysis was not necessary because relator was disabled at the time his employment was terminated in July of 2005. Although not precisely stated, it appears that it was this argument that the magistrate was rejecting.
 {¶ 14} We agree with the magistrate's analysis of this issue. Although relator may have been physically unable to perform any work at the time his termination occurred, the violation of the work rule that precipitated that termination occurred when he initially applied for employment, prior to his industrial injury. It is important to ensure that relator's termination for failing to disclose his conviction when asked to disclose such convictions on his employment was not a pretext used by the employer to avoid the award of TTD to relator. Consequently, it is appropriate to issue the writ recommended by the magistrate so the commission can fully consider all the circumstances surrounding relator's termination, and ensure that relator's termination was not causally connected to his work injury. *Page 7 
 {¶ 15} Therefore, we overrule relator's objections to the magistrate's decision, grant relator's request for a writ of mandamus directing the commission to vacate its order denying relator TTD, and remand this matter to the commission for proceedings consistent with this opinion.
Objections overruled; writ of mandamus granted.
 BROWN and WHITESIDE, JJ., concur. WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 8 
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 16} Relator, Timothy F. Lawrence, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary *Page 9 
total disability ("TTD") compensation on grounds that relator had voluntarily abandoned his employment with Evergreen Plastics, Ltd. ("employer"), due to his having indicated on his employment application that he had not been convicted of a crime when, in fact, he had been.
Findings of Fact:
 {¶ 17} 1. On August 9, 2004, relator filled out an application for employment with the employer. On the application, relator was asked to disclose whether he had "ever pled `guilty' or `no contest' to, or been convicted of a crime?" In response, relator checked the box indicating he had not been convicted of a crime.
 {¶ 18} 2. Relator began working for the employer in September 2004.
 {¶ 19} 3. Approximately nine months after he began his employment with the employer, on May 18, 2005, relator sustained a work-related injury. According to the first report of injury completed by relator, he twisted his left knee on loose flake on the floor.
 {¶ 20} 4. On the same day, relator presented at Bellevue Hospital complaining of left knee pain. Relator was released from the hospital with the following diagnoses: "Left knee sprain, rule out internal derangement. He is sent home in stable and improved condition." Relator was released to return to work with restrictions on May 19, 2005. Those restrictions included that he perform seated work mostly with limited standing/walking, indicating that relator could stand/walk less than occasionally but more than never. *Page 10 
 {¶ 21} 5. On May 20, 2005, relator requested authorization for an MRI and for physical therapy three times a week. The employer approved the request with the disclaimer that the claim was pending.
 {¶ 22} 6. Relator presented again at Bellevue Hospital on May 22, 2005, with pain and nausea. It was noted that relator had difficulty bending his knee and that he would not tolerate the McMurray's test. According to Taber's Cyclopedic Medical Dictionary (20 Ed.2005) ("Taber's"), the McMurray's test is performed to determine whether the patient has a torn meniscus. Relator was also taken off work May 23 and 24, 2005.
 {¶ 23} 7. The MRI was performed on May 24, 2005, and revealed the following impression: "Horizontal tear posterior horn medial meniscus extending to the inferior articular surface."
 {¶ 24} 8. Relator presented at Bellevue Hospital again on May 27, 2005, complaining of left hip pain. The doctor indicated that relator continued to have left knee pain which was exacerbated by movement. Relator was taken off work from May 27 through 28, 2005.
 {¶ 25} 9. Relator presented at Bellevue Hospital again on May 29, 2005, complaining of throbbing pain in his knee. Relator was treated and discharged the same day and was taken off work for May 29, 2005.
 {¶ 26} 10. On May 31, 2005, relator was released to return to work with the same restrictions as before. This included seated work mostly and limited standing/walking. It was further indicated that relator must wear a knee brace and should not perform any safety sensitive jobs while taking his pain medication. *Page 11 
 {¶ 27} 11. By order mailed June 1, 2005, the Ohio Bureau of Workers' Compensation ("BWC") allowed relator's claim for the following condition: "844.9 Sprain of knee leg nos left."
 {¶ 28} 12. On June 1, 2005, relator requested authorization for an orthopedic consultation. The employer approved the request, again with the disclaimer that the claim was pending.
 {¶ 29} 13. On June 6, 2005, relator filed a motion requesting that his claim be additionally allowed for left knee meniscus tear. The employer did not approve the additional claim allowance and indicated that the matter remained pending.
 {¶ 30} 14. The record includes the treatment notes of Ty N. Tracy, M.D., dated June 6 and 9, 2005. Dr. Tracy performed specific tests including the Apley's Distraction test which was positive on relator's left knee. According to Taber's, the Apley's Distraction test is used to differentiate pain caused by meniscal tear from ligament sprains. Relator was referred to Kelley Randall, M.D., for an orthopedic evaluation.
 {¶ 31} 15. By order mailed June 7, 2005, the BWC issued an order replacing the prior BWC order and specifically allowing relator's claim for the following conditions: "844.9 Sprain of knee leg nos left" and "836.0 Tear med menisc knee-cur left."
 {¶ 32} 16. Relator saw Dr. Randall and his office notes are in the file. Dr. Randall stated that, based upon his review of the medical evidence, including the MRI, it was his opinion that relator did have a torn medial meniscus and that the injury was a direct result of the work injury he sustained on May 18, 2005. Dr. Randall indicated that he was *Page 12 
awaiting approval for surgery on relator's left knee. Furthermore, Dr. Randall indicated that relator was unable to work.
 {¶ 33} 17. On June 10, 2005, relator filed a request for the authorization of treatment for the following: "CMT, 2 Passive Modalities, 1 Active Modality." The employer noted that this was a duplicate request that had previously been approved with the disclaimer that the matter was still pending.
 {¶ 34} 18. Relator submitted C-84s from Dr. Randall certifying that he was temporarily totally disabled through October 10, 2005, and further indicating that relator was awaiting approval of both the diagnosis and surgery.
 {¶ 35} 19. Dr. Tracy completed a form dated June 28, 2005, indicating that relator was a surgical candidate, that, in his opinion, there was a direct causal relationship between the injury and the diagnosis, that relator did not have a pre-existing condition, and indicating that relator was disabled from employment.
 {¶ 36} 20. Dr. Randall completed a similar form indicating that there was a direct and proximate relationship between his diagnosis and the injury, that claimant did not have a pre-existing condition, that Dr. Randall first saw relator on June 9, 2005, and that he was disabled from the date through the present. Dr. Randall also indicated that relator was currently awaiting authorization for surgery.
 {¶ 37} 21. Relator was examined by Timothy Lawrence, M.D., who issued a report dated July 8, 2005. Dr. Lawrence opined that relator did have a left knee strain/sprain with a medial meniscus tear, that his mechanism of injury was consistent with the MRI *Page 13 
and the clinical findings and that, inasmuch as physical therapy treatment has not been successful, the surgical intervention recommended by Dr. Randall was appropriate.
 {¶ 38} 22. In July 2005, the employer informed relator that his employment was being terminated because the employer had recently discovered that relator had falsified information on his employment application.
 {¶ 39} 23. The employer's appeal from the BWC order allowing relator's claim was heard before a district hearing officer ("DHO") on September 9, 2005, and was affirmed. The DHO also determined that TTD compensation should be paid from June 9, 2005 and continuing based upon the submission of medical evidence. The DHO further authorized all medical treatment and payment of same. At the hearing, the employer argued that relator had voluntarily abandoned his employment. The DHO rejected this argument as follows:
 The employer's argument that injured worker voluntarily abandoned his position by falsifying his employer application is found not well taken. The application was not submitted to the file to support the termination. When the injured worker was questioned, he stated that he sometimes checked yes when asked if he had a felony conviction and sometimes left the matter blank. Neither answer can be considered false. Per employer's warning statement on the Application, as reported in the letter from Barbara Fox, on file, information that is incomplete will result in immediate discharge whenever it is discovered. Even presuming that injured worker left that particular question blank, it stretches credulity to believe that the employer failed to note said omission at the time of hiring, when the application was found to be sufficient to offer injured worker his position.
 {¶ 40} 24. The employer appealed and submitted both a copy of the employment application completed by relator as well as the July 22, 2005 note completed by *Page 14 
Barbara A. Fox, the Human Resources/Safety Manager for the employer. The note specifically provided as follows:
 It has recently been discovered that you provided false information on your employment application concerning your previous conviction and subsequent incarceration for burglary and aggravated assault. As stated clearly and in red above the line on which you signed the application, ". . . any information provided by me that is found to be false, incomplete or misrepresented in any respect, will be sufficient cause to . . . result in my immediate discharge from the employer's service, whenever it is discovered." Due to this fact, your employment with this company is hereby terminated. * * *
 {¶ 41} 25. The employer's appeal was heard before a staff hearing officer ("SHO") and resulted in an order modifying the prior DHO's order. The SHO allowed the claims for the requested conditions, and authorized the medical treatment and payment of bills to be processed by the Managed Care Organization assigned to the claim. The SHO determined that TTD compensation should not be paid to relator for the following reasons:
 The Staff Hearing Officer finds persuasive the employer's argument that the injured worker made false or misrepresentations on his employment application, which resulted in his termination. The Staff Hearing Officer finds the application specifically indicates at the bottom that falsification of information could result in termination. This Staff Hearing Officer asked the injured worker at hearing why he did not mark the box regarding criminal convictions. The injured worker specifically testified that that [sic] in all cases where he had filled out that information on an application he was not hired. This Staff Hearing Officer then asked him if it was therefore his intention to mislead the employer, in regard to his prior criminal history, in order to obtain employment and the injured worker acknowledged that was the case. *Page 15 
 Therefore, this Staff Hearing Officer finds this case is distinguishable from State ex rel. Nick Strimbu v. Industrial Commission (2005) [1]06 Ohio St. 3d 173, on the basis the misrepresentation or non-disclosure on the employment application was indeed intentional. As a result, the Staff Hearing Officer finds that the injured worker's own activities resulted in a voluntarily abandonment of employment. Therefore, the injured worker is not entitled to Temporary Total Disability Compensation in this claim.
 {¶ 42} 26. Both the relator and employer appealed.
 {¶ 43} 27. By order mailed November 19, 2005, both appeals were refused.
 {¶ 44} 28. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 45} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. *Page 16 
 {¶ 46} The issue raised in this mandamus action concerns whether the commission abused its discretion when it denied relator TTD compensation based upon a finding that he had voluntarily abandoned his employment by failing to disclose his previous conviction on his employment application. Relator's primary argument is that the commission determined this matter based upon an incorrect reading of the law. Relator argues that his termination did not break the causal connection between his injury and his inability to work because inability to work is solely a result of the allowed conditions. Further, relator argues that a claimant can only remove himself from employment if he has the physical capacity to work at the time of the abandonment or removal and cites State ex rel. Pretty Prods., Inc. v. Indus. Comm. (1996),77 Ohio St.3d 5. Because relator was already disabled at the time the employer terminated his employment, it is still the injury that causes him to be without wages. Lastly, relator argues that the employer's decision to terminate his employment was pretextual and was motivated by the allowance of the claim.
 {¶ 47} The commission argues that the voluntary abandonment doctrine applies whether the violation of the written work rule occurred at the time the application was filed or after the injury. Relator had testified that, because he had been unable to get a job when he indicated on employment applications that he had been convicted of a crime, he purposely answered the question in the negative in an attempt to mislead the employer and get the job. The commission points out that the employment application plainly informs the applicant that if it is determined that any of the information provided on the application was false, the employee may be terminated immediately. Further, the *Page 17 
commission argues that relator failed to assert the pretext argument before the commission and that relator is precluded from raising it now.
 {¶ 48} For the reasons that follow, it is this magistrate's conclusion that this court should issue a writ of mandamus in this case, as more fully explained below.
 {¶ 49} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. See, also,State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. It is well established that a discharge from employment may be "voluntary" in some circumstances. State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118. In State ex rel. Louisiana-PacificCorp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, the Supreme Court of Ohio stated that, when a worker has been discharged for violating a rule, the commission may conclude that the discharge constituted a voluntary relinquishment of employment where: (1) the employer's rule or policy defined the prohibited conduct clearly in writing; (2) the rule or policy identified the violation as a dischargeable offense; and (3) the worker knew, or should have known, both the rule and the consequences of violating the rule or policy. Where a claimant has voluntarily relinquished his or her job, either by resigning or by abandoning it under Louisiana-Pacific, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. See McKnabb v. Indus.Comm. (2001), 92 Ohio St.3d 559.
 {¶ 50} On several occasions, both the Supreme Court of Ohio and this court have reiterated that post-injury firings must be carefully scrutinized. In State ex rel. Smith v. Superior's Brand Meats, Inc. *Page 18 
(1996), 76 Ohio St.3d 408, 411, the court recognized "the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists." Further, the court has noted that the nature of the departure has remained the pivotal question. Smith; State ex rel.Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44.
 {¶ 51} In the present case, the magistrate realizes that there is more than a simple allegation of misconduct. The employer presented a copy of the employment application which specifically informed relator that the providing of false information could lead to termination. However, that fact alone should not, necessarily, determine the action. As the court stated in Smith, it is imperative for the commission to carefully examine the totality of the circumstances. In essence, the court has commanded the commission to carefully examine the totality of the circumstances in each case.
 {¶ 52} In its brief, the commission cites this court's decision inState ex rel. Walters v. Indus. Comm., Franklin App. No. 01AP-1043, 2002-Ohio-3236, for the assertion that the timing of the violation is a factor to be considered by the commission but that it is not a determinative or conclusive factor. The commission argues that, to hold that it could never find a voluntary abandonment of employment underLouisiana-Pacific in cases where the employer's discovery of the violation post-dates the injury, would result in outcomes that are contrary to the rationale of Louisiana-Pacific.
 {¶ 53} This magistrate does not disagree with the above statements made by the commission. However, the magistrate specifically notes the following: the Supreme Court *Page 19 
of Ohio has specifically indicated that post-injury firings must be carefully scrutinized and has further stated that it is imperative that the commission carefully examine the totality of the circumstances when the argument is made that the injured worker has voluntarily abandoned their employment. The timing of the violation and the firing is one factor for the commission to consider.
 {¶ 54} Further, the Walters case is very similar to this case. InWalters, the claimant had falsified information on his employment application — he indicated that he had no criminal conditions when, in fact, he did. The employer did not discover the falsification until after the claimant sustained an injury and was disabled. Pursuant toLousiana-Pacific, the commission found that claimant voluntarily abandoned his employment and was not entitled to TTD compensation.
 {¶ 55} This court granted a writ of mandamus because the commission did not adequately address the issue. Specifically, the commission had failed to focus on and determine the inferences that may reasonably be drawn from claimant's conduct as well as whether the termination was actually due to the injury and not the violation.
 {¶ 56} In the present case, there is no indication that the commission considered the timing of relator's violation, his date of injury, and his subsequent termination. Although the commission argues that relator did not raise this issue before the commission, the magistrate finds first that, based upon the state of the record before this court, it is impossible to determine whether or not any argument to that effect was made. Second, the magistrate finds that the obvious timeline in the present case raises the issue without any further comment. Relator completed his employment application in August 2004. *Page 20 
The employer hired relator in September 2004, at which time relator began working for the employer. Relator sustained his work-related injury some nine months after he began his employment. Two months after his date of injury, at a time when doctors were recommending surgery, the employer performed a background check on relator, found that he had a criminal conviction, and terminated his employment. Were the commission to have carefully scrutinized the post-injury firing and followed the Supreme Court of Ohio's imperative to carefully examine the totality of the circumstances, a different result may have been reached.
 {¶ 57} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion by failing to carefully scrutinize the post-injury firing and failing to follow the Supreme Court of Ohio's imperative to carefully examine the totality of the circumstances surrounding relator's injury, his violation, and his subsequent firing. Relator's argument that the commission can never apply Louisiana-Pacific in this type of situation, is rejected. Further, the commission's argument that relator cannot assert the issue of pretext in this mandamus action is rejected both because the record is unclear as to whether or not the issue was raised and because the Supreme Court of Ohio has specifically required that the commission examine the totality of the circumstances whenever there is a post-injury firing. As such, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order which denied relator's application for TTD compensation and to reissue an order, granting or denying the requested compensation, after fully *Page 21 
examining the circumstances surrounding relator's injury, his violation of the work rule, and his subsequent firing. *Page 1